UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 AND 9
Maggie H. McGee, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email: maggie.mcgee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Case No. 21-14934 KCF |
|  | Chapter 11 |
| Dukat, LLC., |  |
|  | Honorable Kathryn C. Ferguson |
| Debtor. |  |

**OBJECTION OF THE UNITED STATES TRUSTEE TO
THE DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a), 327(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO (I) RETAIN MATTHEW SCHWARTZ, CPA OF BEDERSON, LLP AS CHIEF RESTRUCTURING OFFICER AND TO PROVIDE RELATED SERVICES; (II) TO APPOINT THE CHIEF RESTRUCTURING OFFICER NUNC PRO TUNC TO THE PETITION DATE; AND (III) GRANTING RELATED RELIEF**

The United States Trustee ("U.S. Trustee"), by and through counsel, and in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby files this objection ("Objection") to the Motion For Entry Of An Order Pursuant To Sections 105(a), 327(a) and 363(b) of the Bankruptcy Code Authorizing the Debtor To (I) Retain Matthew Schwartz, CPA Of Bederson, LLP As Chief Restructuring Officer and to Provide Related Services; (II) To Appoint The Chief Restructuring Officer Nunc Pro Tunc To The Petition Date; And (III) Granting Related Relief ("CRO Application") (ECF No. 13) filed in connection with the above referenced case, and respectfully states as follows:

1

## BACKGROUND

1. On June 16, 2021, Dukat, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11, subchapter V, of title 11 of the United States Code. ECF No. 1. Debtor operated a "drop ship" internet business through multiple websites. In a drop ship business, an entity purchases items from third parties and ships directly to its customers. It does not retain inventory.

2. The Petition identifies Elliott Kattan as the Managing Member of the Debtor. ECF No. 1 at 5.

3. The Debtor filed Schedules or a Statement of Financial Affairs ("SoFA") on June 16, 2021. ECF No.1.

4. Schedule A/B identifies assets including: 1) a bank account holding $100; 2) ownership of BMK, LLC having an unknown value; 3) an internet domain name, customer lists, and software operating system, all with unknown values; and 4) a note receivable in the amount of $4 million. ECF No. 1.

5. Schedule D identifies secured claims of $3,023,018, which is held by Elliott Kattan. ECF No. 1. Other creditors are identified on Schedule D but are identified as unknown. Schedule E/F identifies general unsecured debts totaling $2,228,731.16, all listed as contingent, unliquidated and disputed. ECF No. 1.

6. Debtor's SoFA identifies no income in 2021, $269,317 in 2020, and $1,207,462 in 2019. Debtor identified seven lawsuits pending at the time of filing including a lawsuit by a landlord for non-payment of rent. The SoFA identifies Mourant Kattan as holding a 45% interest in the Debtor and Elliot Kattan holding 55%. ECF No. 1.

7. The IDI was conducted on July 7, 2021 at which time the Debtor's representatives stated that the Debtor was not operating and had not operated in 2021. They indicated that it was their intention to "recapitalize" the Debtor, reopen the business, and pay creditors through a plan. They further stated that they did not know how much it would cost to recapitalize the Debtor or where the money would come from, except that it may come from friends and family or an outside investor.

8. The meeting of creditors is scheduled for July 15, 2021 at 11:00 a.m.

9. On June 25, 2021, the Debtor filed the CRO Application. ECF No. 13. The Certification of David H. Stein filed in support of the CRO Application, states the Debtor "has determined that the services of an experienced restructuring professional will assist the Debtor in its efforts to maximize the value of its estate, will assist in management related functions and will assist in development of a new business model and plan of reorganization." ECF No. 13-1 at ¶ 7. The Stein Certification further states that the CRO will "provide operational and financial advisory services in connection with the Chapter 11 case. " *Id*. at ¶ 8. The description of services to be provided by the CRO include: "attendance at the meetings with Debtor and company personnel; attendance at court hearings; review of and/or approval of relevant pleadings, as necessary; review of relevant documents; analysis of assets and liabilities; assistance in preparation of budgets, projections and cash flow forecasts; assistance in preparation of Monthly Operating Reports; attendance at meetings with Debtor's attorneys and creditors, as necessary; assistance in drafting a Plan of Reorganization ("Plan") and Disclosure Statement; and providing court testimony with respect to Plan feasibility, as necessary." Id. at ¶ 12.

10. The proposed CRO is to be paid a $15,000 retainer which will come from Elliot Kattan. Elliot Kattan is proposed to receive an administrative claim in the Debtor's case for the same amount. The CRO will bill at the rate of $470 per hour. *Id.* at ¶ 17 and 18.

11. The CRO Application indicates that the proposed CRO has no connection with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. ECF No. 13-4 at ¶14 and Exhibit A attached thereto. However, Elliot Kattan, Debtor's managing member, is a secured creditor of the Debtor.

12. The CRO Application also states that the proposed CRO does not hold an adverse interest to the estate, does not represent an adverse interest to the estate, is a disinterested person under 11 U.S.C. § 101(4) and does not represent or hold any interest adverse to the debtor or the estate with respect to the matter for which he/she will be retained under 11 U.S.C. §327(e). ECF No. 13-4 at ¶14 and Exhibit A attached thereto.

## **OBJECTION**

13. Under 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 7 and 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the Courts. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6t Cir. 1990) (describing the U.S. Trustee as a "watchdog"); H.R. REP. NO. 95-595 at 88 (1977), *reprinted in* 1977 U.S.C.C.A.N. 5787, 5963, 6049 ("Some of the supervisory functions removed

from the judge will be transferred to a new system of United States Trustees who will act as bankruptcy watchdogs[.]").

### I. The CRO Application Fails to Show that the CRO is Necessary or in the best interest of the estate.

14. Pursuant to 11 U.S.C. § 327(a) "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title."

15. In a Chapter 11 case, it is fundamental that a debtor in possession or a trustee is obligated to act not in his or her own best interest, but rather in the best interest of the entire estate, including the creditors and owners of the debtor estate. *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *In re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir.1986); *In re Morningstar Marketplace, Ltd.* 544 B.R. 297, 303 (Bankr. M.D. Pa. 2016). In determining whether to grant or deny approval of a professional selected by the trustee or debtor in possession pursuant to Section 327(a), the Court must consider whether the selection is in the best interest of the estate, *In re Arlan's Department Stores, Inc.,* 615 F.2d 925, 932 (2d Cir.1979); *In re eToys, Inc.,* 331 B.R. 176, 189 (Bankr. D. Del 2005); *In re Leslie Fay Cos,* 175 B.R. 25, 533 (Bankr. S.D.N.Y. 1994), and whether the appointment will aid in the administration of the proceeding. *In re Slack,* 73 B.R. 382 (Bankr.W.D.Mo.1987).

16. The requirement that a bankruptcy court generally must approve a debtor's retention of professionals prior to services being performed provides notice to all parties in interest and an opportunity to object to the retention on necessity or conflict grounds, ensures that the court knows the type of professional engaged, its integrity, its experience with this type

5

of work, and its competency, and ensures that the appropriateness of the professional's retention is resolved prior to its provision of services. *In re Fleming Companies, Inc.* 305 B.R. 389 (Bankr. D. Del. 2004).

17. The CRO Application fails to explain why a CRO is necessary or in the best interest of the estate. Given that there are no operations, the necessity of a CRO at this juncture is highly speculative. Currently, the Debtor is not operating and no identified plan to reopen is described in the Application. The Debtor does not provide any information with regard to how it intends to recapitalize, when it believes such funds will be available, or even how much the Debtor requires to reopen. Nor does the Application provide any details as to efforts made to attempt to recapitalize the Debtor prior to filing the bankruptcy case. Without this information, the necessity of the employment of a CRO is highly speculative, as is the showing of whether such employment is in the best interests of the estate.

18. The Debtor has two responsible individuals who have conducted the Debtor's business, albeit unsuccessfully, since the origination of the business in 2018 (as stated by Debtor's managing member at the IDI). No showing has been made as to what the proposed CRO will offer the Debtor in addition to, or in lieu of, the existing responsible individuals. For instance, there is no explanation as to how or whether the proposed CRO will assist in recapitalizing the Debtor.

19. The description of the services to be provided in the CRO Application are akin to an accountant or financial advisor to the Debtor and not a CRO. The proposed CRO is to attend meetings with the Debtor and its personnel, analyze assets and liabilities, and assist in preparing budgets, projections and cash flow statements. These are the functions of an accountant or financial advisor. No where does the CRO Application state that the CRO is to step into the

shoes of the current managing member. The Application fails to define the role of the CRO including whether the CRO has the sole power to manage under any current operating agreement and whether the current manager has waived his rights and powers of control under any operating agreement. Further, the Application does not state who the CRO reports to or what the management structure of the Debtor is to be after the appointment of the CRO.

### II. The Proposed CRO Is Not Disinterested.

20. Under the clear language of 11 U.S.C. § 327(a), any professional employed by a debtor-in-possession must be "disinterested" and neither hold nor represent an interest adverse to the estate.

21. Section 101(14), in turn, defines "disinterested person" as a person who does not have an "interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14). Sec. 101(14)C), referred to as the "catch-all clause," has been characterized as "broad enough to include anyone who in the slightest degree might have some interest or relationship that would distract from the independent and impartial attitude which is required by the [Bankruptcy] Code." *In re Glenn Elec. Sales Corp.*, 89 B.R. at 413; *See also, In re Black Hills Greyhound Racing Ass'n*, 154 B.R. 285, 292 (Bankr. D.S.D. 1993).

22. Although not defined in the Bankruptcy Code, "adverse interest" has been interpreted in this District to mean:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Glenn Elec. Sales Corp.*, 89 B.R. 410, 413 (Bankr. D.N.J.), *aff'd*, 99 B.R. 596 (D.N.J. 1988) (quoting *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr. D.N.J. 1988)). In applying this definition, the court in *In re Glenn Elec. Sales Corp.* relied upon a trilogy of cases published from the District of Hawaii dealing with conflict of interests between debtors and counsel in bankruptcy proceedings.

23. Professionals for a bankruptcy estate must be committed to protecting the estate's interests and be free of the "interests of any other person" so that their "basic judgment and responsibility to the estate" is not affected. *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 337 (E.D. Pa. 1982). A professional "should not place himself in a position where he may be required to choose between conflicting interests or duties." *Id.; See, e.g., In re 765 Assocs.*, 14 B.R. 449, 451 (Bankr. D. Hawaii 1981) ("An attorney should not place himself in a position where he may be required to choose between conflicting duties.")

24. Based on the information presented, the proposed CRO is not "disinterested" as required by § 327, in that the fees are being paid by the Debtor's managing member, Elliot Kattan, who is a secured creditor and a potential administrative creditor. Elliot Kattan is an insider in this case. The existence of the debtor/creditor relationship between Elliot Kattan and the Debtor presents a conflict of interest because it creates an incentive for Mr. Kattan to act in his self-interest, rather than in the interests of the creditors as their fiduciary duty demands. For example, the CRO may forgo liquidation of the Debtor's assets if Mr. Kattan determines that he wants to recapitalize the Debtor in order to maintain a source of income, even though such recapitalization may not serve the best interests of creditors. Moreover, there is no incentive on either the proposed CRO or counsel to the Debtor to inquire as to the validity and/or priority of Mr. Kattan's secured claim.

25. The U.S. Trustee therefore respectfully submits that the proposed CRO holds an "adverse interest" to the estate due to the payment of fees and expenses by Mr. Kattan. Further, the Application fails to address if Mr. Kattan has any agreement to pays the fees of the CRO going forward.

26. The CRO Application fails to disclose whether the proposed CRO is to control the Debtor and/or act as an officer of the Debtor. If the proposed CRO is in control of the Debtor or is to become an officer of the Debtor then the proposed CRO is not disinterested because he is an insider. 11 U.S.C. § 101(31)(B) and § 327. For this reason, and the reasons stated above, the CRO Application should be denied.

### III. Court Should Deny Administrative Claim Priority to Retainer Paid by Managing Member.

27. Whether a party is entitled to an administrative claim is determined by Section 503. No where in section 503 is a member of an LLC entitled to administrative priority for making a contribution to a debtor to pay the costs and expenses of employing a CRO. While the CRO may seek compensation under section 503, an officer making contributions to the Debtor may not.

28. Even if this Court were to approve the proposed CRO's employment, any allowance of administrative claim at this juncture is premature. The only administrative claim definition that might apply is section 503(b)(3)(D) allowing an administrative claim for "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title." Thus, the managing members seeking an administrative claim under this section must show that they made

a substantial contribution to the case. The Third Circuit Court of Appeals has spoken on the meaning of substantial contribution in *Lebron v. Mechem Financial Inc.,* 27 F.3d 937 (3d Cir.1994). As stated in *Lebron:*

> The services engaged by creditors, creditor committees and other parties interested in a reorganization are presumed to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the services 'directly and materially contributed' to the reorganization.

Thus, '[i]n determining whether there has been a 'substantial contribution' pursuant to section 503(b)(3)(D), the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors.' '[S]ervices which substantially contribute to a case are those which foster and enhance ... the progress of reorganization.' Under this rubric, the managing member of the Debtor must show that he was not acting in his own benefit but the benefit to the debtor and to the estate and must show a direct and material contribution to the reorganization of the Debtor. No such showing has been made and any attempt to receive an administrative claim by the managing member at this time is premature as the member cannot make a showing of a direct and material benefit to the Debtor's reorganization. Regardless, creditors should not bear the risk associated with compensating a CRO in a non-operating entity. If the managing member desires to attempt to recapitalize and reopen the Debtor, the members of the LLC should bear all of the risks of that endeavor.

**IV.    Section 363 does not apply in this case as the Debtor has filed the Application under 327(a)**

29.    The Debtor seeks authority to employ the CRO under both section 327 and 363. However, section 363 applies only where section 327 does not, i.e, where the Debtor seeks to employ a clearly disinterested or conflicted former CEO or similar officer to serve on behalf of the Debtor to assist in the liquidation of assets or similar role that is directly associated to the

10

bankruptcy cases. *See e.g., In re K.G. IM, LLC*, 620 B.R. 469 (Bankr. S.D.N.Y. 2020) (allowing employment of former officer under section 363). In this context, section 363 does not apply. By citing to both sections 363 and 327, the Application is confusing and fails to address how the CRO is to be compensated going forward and whether the CRO will file fee applications.

### V. Applicant Must Meet Court Factors Before Applicant Can Receive a Post-Petition Retainer.

30. In order to receive a post-petition retainer, a professional is required to meet the factors set forth in *In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 680 (Bankr. D. Colo. 1992). Factors considered in the context of a proposed post-petition retainer include, but are not necessarily limited to:

    (1) the retainer's economic impact on the debtor's ongoing business operation;

    (2) the retainer's economic impact on the ability of the debtor to reorganize;

    (3) the amount and reasonableness of the retainer;

    (4) the reputation of debtor's counsel; and

    (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should this Court determine that the fees paid to counsel are not justified.

*See In re Jefferson Bus. Ctr. Assocs.*, 135 B.R. 676, 680 (Bankr. D. Colo. 1992).

28. "[A]n applicant who requests a post-petition retainer or some other payment procedure, should demonstrate in its application papers that the *Jefferson* factors have been met." *See, In re Mac and Maryse Troung*, 259 B.R. 264, 268-69 (Bankr. D.N.J. 2001). Here, no such demonstration is made in the Application. The Debtor's principals should be required to provide documentary proof that the Debtor's principals are to fund the retainer without adverse economic

consequences to the Debtor's operations and its ability to reorganize. The U.S. Trustee submits that this proffer can only be made if the Debtor's principal does not receive an administrative claim in return for payment of the retainer.

## CONCLUSION

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny the CRO Application.

                                            Respectfully submitted,

                                            ANDREW R. VARA
                                            UNITED STATES TRUSTEE
                                            REGION 3 AND 9

                                            By: */s/ Maggie McGee*
                                                        Maggie McGee
                                                        Trial Attorney

Dated: July 13, 2021