## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>DUKAT, LLC,<br><br>       *Debtor-in-Possession.* | Case No.: 21-14934 (KCF)<br><br>Judge: Hon. Kathryn C. Ferguson<br><br>Chapter 11 (Subchapter V)<br><br>Hearing Date: October 26, 2021<br>                at 10:00 a.m. |

================================================================

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY FILED BY TARVISIUM HOLDINGS, LLC AND 45N12E, LLC**

================================================================

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ  07095
732-636-8000
DAVID H. STEIN, ESQ.
*Attorneys for* Dukat, LLC,
Debtor and Debtor-in-Possession

DAVID H. STEIN, ESQ.
  Of Counsel & On the Brief

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT..........................................1

BACKGROUND.....................................................1

STATEMENT OF FACTS.............................................1

    A.    The Bankruptcy Proceedings............................1

    B.    The Preliminary Injunction...........................3

    C.    The Chapter 11 Plan..................................4

    D.    The Submission of Jurisdiction of the Bankruptcy
        Proceedings..........................................7

    E.    Commencement of the Chapter 11 Case and Violation
        of the Automatic Stay................................8

    F.    Continuation of the Automatic Stay...................9

LEGAL ARGUMENT................................................10

POINT I......................................................10

    THE BANKRUPTCY COURT SHOULD DENY RELIEF FROM THE
    AUTOMATIC STAY...........................................10

POINT II.....................................................17

    THE BANKRUPTCY COURT SHOULD DENY RELIEF FROM THE
    AUTOMATIC STAY AS THE CLAIMS AT ISSUE INVOLVE
    CORE PROCEEDINGS UNDER 28 U.S.C. § 157(b)(2).............17

POINT III....................................................20

    THE BANKRUPTCY COURT SHOULD DENY RELIEF FROM THE
    AUTOMATIC STAY AS THE MOVANTS HAVE SUBMITTED TO
    THE JURISDICTION OF THE BANKRUPTCY COURT................20

POINT IV.....................................................24

    WAIVER OF THE FOURTEEN DAY STAY PROVISIONS OF
    FED. R. BANKR. P. 4001(a)(3) IS NOT WARRANTED...........24

CONCLUSION...................................................25

#12674622.1

## <u>TABLE OF AUTHORITIES</u>

<u>**PAGE**</u>

<u>**CASES**</u>

<u>Baldino v. Wilson (In re Wilson)</u>,
  116 F.3d 87 (3d Cir. 1997) ................................... 10

<u>Buena Vista TV v. Adelphia Commc'ns Corp.</u>
  (In re Adelphia Commc'ns Corp.),
  307 B.R. 404 (Bankr. S.D.N.Y. 2004) ........................ 20

<u>Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V.</u>
  (In re Cruisephone, Inc.),
  278 B.R. 325 (Bankr. E.D.N.Y. 2002) ........................ 21

<u>In re China Fishery Group, Ltd.</u>,
  16-11895 (JLG), 2017 WL 3084397 (Bankr. S.D.N.Y. 2017) ...... 20

<u>In re Marcus Hook Development Park, Inc.</u>,
  943 F.2d 261 (3d Cir. 1991) ................................. 19

<u>In re Nickels Midway Pier, L.L.C.</u>,
  2010 WL 415328 (D.N.J 2010) ................................. 19

<u>In re Orion Pictures Corp.</u>,
  4 F.3d 1095 (2d Cir. 1993) .................................. 18

<u>In re Rosen</u>,
  208 B.R. 345 (D.N.J. 1997) .................................. 11

<u>In re Score Bd., Inc.</u>,
  238 B.R. 585 (D.N.J. 1999) .................................. 11

<u>In re Stokes</u>,
  320 B.R. 821 (Bankr. D. Md. 2004) ........................... 20

<u>In re Todd Shipyards Corp.</u>,
  92 B.R. 600 (Bankr. D.N.J. 1988) ............................ 12

<u>Langenkamp v. Culp</u>,
  498 U.S. 42, 111 S.Ct. 330 (1990) ........................... 20

<u>Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.</u>
  <u>(In re Mid-Atlantic Handling Sys., LLC)</u>,
  304 B.R. 111 (Bankr. D.N.J. 2003) ...................... 11, 12

<u>Matter of Delta Produce, L.P.</u>,
  845 F.3d 609 (5th Cir. 2016) ................................ 23

#12674622.1

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**PAGE**

<u>Stern v. Marshall</u>,
  564 U.S. 462 (2011) ........................................ 22

<u>Weiss v. United States</u>,
  Civil Action No.: 00-1672, 2000 U.S. Dist. LEXIS 10663 (E.D.
  Pa. Jul. 31, 2000) ........................................ 12

<u>Wellness Int'l Network, Ltd. v. Sharif</u>,
  575 U.S. 665, 135 S.Ct. 1932 (2015) ........................ 23

<u>Younge v. Tribune Company</u>
  (In re Tribune Media Company),
  902 F.3d. 384 (3rd Cir. 2018) ..................... 21, 22, 23

## <u>STATUTES</u>

11 U.S.C. § 105(a) ........................................... 3

11 U.S.C. § 362(a) ........................................ 3, 8

11 U.S.C. § 362(d) .......................................... 10

11 U.S.C. § 362(d)(1) ....................................... 10

11 U.S.C. § 548 .................................. 5, 13, 14, 15

11 U.S.C. §§ 1189 – 1191 ..................................... 4

28 U.S.C. § 1334 ............................................ 17

28 U.S.C. § 157 ......................................... 18, 22

28 U.S.C. § 157(a) .......................................... 17

28 U.S.C. § 157(b)(1) ....................................... 18

28 U.S.C. § 157(b)(2) ................................ 17, 18, 19

28 U.S.C. § 157(b)(2)(A) .................................... 19

28 U.S.C. § 157(b)(2)(B) .................................... 19

28 U.S.C. § 157(b)(2)(C) .................................... 19

28 U.S.C. § 157(b)(2)(F) .................................... 19

28 U.S.C. § 157(b)(2)(G) .................................... 19

#12674622.1

## TABLE OF AUTHORITIES (cont'd)

<u>PAGE</u>

28 U.S.C. § 157(b)(2)(H).......................................19

28 U.S.C. § 157(b)(2)(L).......................................19

28 U.S.C. § 157(b)(2)(O).......................................19

28 U.S.C. § 157(c)(1).........................................18

## RULES

Fed R. of Bankr. P. 7004 (f)................................21

Fed. R. Bankr. P. 4001(a)(3)..............................24, 25

## PRELIMINARY STATEMENT

Please accept this Memorandum of Law filed by Dukat, LLC (the "Debtor"), a debtor and debtor-in-possession, in the above Chapter 11 proceeding and a plaintiff in Adversary Proceeding No.: 21-01315(the "Adversary Proceeding") submitted in opposition to the Motion for Relief from the Automatic Stay (the "Motion"), filed by Tarvisium Holdings, LLC and 45N12E, LLC (collectively, the "Movants"), which Motion is currently scheduled for hearing on **October 26, 2021 at 10:00 a.m.**

## BACKGROUND

The facts relevant to the Motion are set forth in the Certification of Elliott Kattan dated July 12, 2021, the Supplemental Certification of Elliott Kattan dated August 10, 2021, the Certification of Elliott Kattan dated October 18, 2021 (the "Kattan Certification"), the record of the instant Chapter 11 proceedings (Case No.: 21-14934) and the record of the Adversary Proceeding, which are being incorporated herein by reference.

## STATEMENT OF FACTS

### A.   The Bankruptcy Proceedings

On June 16, 2021 (the "Petition Date"), the Debtor filed a Chapter 11, Subchapter V Small Business reorganization proceeding in the United States Bankruptcy Court for the District of New Jersey. Since the Petition Date, the Debtor has operated as a debtor-in-possession and Mark Politan has been appointed

-1-

Subchapter V Trustee. The Schedules and Statement of Financial Affairs filed in this Chapter 11 case, as amended, reveal that the Debtor has in excess of thirty (30) creditors scheduled in these proceedings. [Bankruptcy Docket No. 1 and 31].

In connection with the Debtor's Chapter 11 case, the Bankruptcy Court has entered orders appointing Wilentz, Goldman & Spitzer, P.A. as counsel for the Debtor and Bederson, LLP as its financial advisor.

With regard to the Debtor's Chapter 11 case, the Debtor has filed its required first day pleadings, has completed its initial debtor interview, has appeared, attended and testified at a Section 341(a) Hearing and Meeting of Creditors, has filed its Operating Reports, supplied insurance and banking information to the Office of the United States Trustee, and has submitted the required Status Report to the Bankruptcy Court.

In addition, the Bankruptcy Court held an Initial Status Conference on August 17, 2021 and all requirements to proceed in a Chapter 11, Subchapter V Small Business reorganization case have been met. Furthermore, the following hearings are listed on the Bankruptcy Court's docket for the Debtor's case:

- Pre-trial Hearing in Adversary Proceeding originally scheduled for hearing on October 26, 2021. However on October 13, 2021, a status report was filed by counsel for Plaintiff and no objections were filed to Plaintiff's proposal for entry of a mediation order and joint order scheduling pretrial proceedings and trial. Accordingly, the Bankruptcy Court marked the pretrial

-2-

conference as "Mediation Order and Joint Order Scheduling Pretrial Proceedings and Trial to be submitted";

- Continued Injunction hearing scheduled for October 26, 2021;
- Motion to Amend Adversary Complaint scheduled for hearing on October 26, 2021;
- Motion to Lift the Automatic Stay scheduled for hearing on October 26, 2021;
- Motion to Reject Lease scheduled for hearing on October 26, 2021;
- Motion to Estimate Claim scheduled for hearing on November 22, 2021; and
- Confirmation Hearing scheduled for hearing on December 15, 2021.

## B.    The Preliminary Injunction

On August 17, 2021 the Bankruptcy Court conducted a hearing and heard oral argument on Debtor's Motion for Preliminary Injunction and Temporary Restraining Order against Movants and their continued prosecution of claims asserted against Debtor's principals, Elliott Kattan and Mourad Kattan, in the United States District Court for the Western District of Missouri, Western Division, Case No. 4:19-cv-00086 (the "Missouri Court Action").

On August 19, 2021, over the objection of Movants who appeared at that hearing and filed papers in opposition to the Debtor's application for injunctive relief [Adv. Docket No. 8], the Bankruptcy Court entered an Order Extending the Automatic Stay under 11 U.S.C. § 362(a) and granted a Restraining Order Pursuant to 11 U.S.C. § 105(a) against the Movants [Adv. Docket No. 22]. The return date of the continued Motion was originally scheduled

for hearing on September 14, 2021, but was adjourned by the Bankruptcy Court upon consent of the parties to October 12, 2021 [Adv. Docket No. 34], and has now been adjourned by the Bankruptcy Court to October 26, 2021 for hearing.

**C.    The Chapter 11 Plan**

The Debtor is a closely-held limited liability company, whose ownership is held by two individuals: (1) Elliott Kattan, owning a 55% membership interest in the Debtor; and (2) Mourad Kattan, owning a 45% membership interest in the Debtor. The Debtor, during the early stages of the Covid-19 pandemic, provided back-office support services and, prior to its ill-fated relationship with Movants, served as an internet retailer of consumer goods through such retailing platforms as Amazon, Walmart and other consumer channels.

On September 16, 2021 the Debtor filed its Chapter 11, Subchapter V Small Business Plan of Reorganization (the "Plan"), [Bankruptcy Docket No. 46], and through the Plan, the Debtor is reorganizing its financial affairs and various obligations pursuant to 11 U.S.C. §§ 1189 – 1191 of the Bankruptcy Code, which permit the Debtor the exclusive right to file a Plan, to proceed to confirmation of the Plan, to deal with creditor claims including those raised by Movants, and to address Debtor's claims against Movants which estate claims seek damages for, among other things, willful violation of the Automatic Stay and Equitable

-4-

Subordination of Claims as asserted in the Adversary Complaint dated July 13, 2021 [Adv. Docket No. 1], which claims are only found in the Bankruptcy Code.

The Motion to Amend Adversary Complaint is scheduled for hearing on October 26, 2021 and includes additional claims brought in the context of the pre-petition business activities between the Debtor and Movants including those additional claims founded upon recovery under the Uniform Fraudulent Conveyance Action ("UFTA"), Section 548 of the Bankruptcy Code to recover assets and/or damages resulting by the Movants improper transfer of intellectual property and/or assets to La Ferramenta, LLC, a Delaware limited liability company and alter-ego of Movants, in-light of their impending default of their payments obligations due and owing to the Debtor under the $4 Million promissory note and to foreclose upon Debtor's security interest in the assets pledged by Movants to the Debtor and transferred to La Ferramenta, LLC, or even perhaps others.[1]

The Debtor, in conjunction with Elliott Kattan and Mourad Kattan, have developed and filed the Plan, that provides for business support and know-how, Plan funding and subordination of secured claims, attaches a Plan Support Agreement with the requisite funding commitment which attaches projections with

---

[1] Debtor's Motion to Amend Adversary Complaint is unopposed.

-5-

credible business assumptions, as reviewed by Bederson & Co., which form the vehicle for the Debtor's emergence from Chapter 11.

The Plan as filed provides for a restart of the Debtor's business operations to enable the Debtor to provide a twenty (20%) percent dividend to unsecured creditors. As part of the reorganization process, the Debtor and the Kattans are earnestly and diligently working with counsel and with Bederson, LLP, its court approved financial advisor, to restart business operations and to repay creditor claims. The Plan, in concert with the pending Adversary Proceeding, will resolve the Debtor's claims and security interests being asserted against Movants, including recovery of the $4 Million Promissory Note provided by Movants to the Debtor, which Promissory Note is property of the bankruptcy estate and will be used to repay unsecured creditor claims in the first instance.

Pursuant to the Court Order dated September 17, 2021 [Bankruptcy Docket No. 47], the Debtor's Plan is out for balloting to creditors and a confirmation hearing is scheduled for December 15, 2021. In that regard, the Debtor has received several affirmative ballots on behalf of unsecured creditors who have voted in affirmatively for the Plan.

#12674622.1

D.   **The Submission of Jurisdiction of the Bankruptcy Proceedings**

The Debtor's claims against Movants have since been joined by Movants through the filing of an Answer, Counterclaim and Third-Party Complaint in the Adversary Proceeding [Adv. Docket No.: 18]. Noteworthy and in addition to the filing of three Notices of Appearance in the bankruptcy proceedings [Bankruptcy Docket No. 9, 10 and 11], is that Movants also filed on August 24, 2021 a Proof of Claim with the Bankruptcy Court [Claim Register No.: 10—1], which submitted its Proof of Claim (including those claims/counter-claims raised in the Adversary Proceeding) to the jurisdiction of the Bankruptcy Court to adjudicate such claims/counter-claims in Debtor's bankruptcy proceedings.

Accordingly, there is no question that Movants have embraced this Chapter 11 bankruptcy process, have jumped headlong into the Adversary Proceeding, have submitted to jurisdiction of the Bankruptcy Court and that the dispute between the Debtor and Movants is ripe for adjudication before this Bankruptcy Court.

As of this date and with the consent of the parties, the Confirmation Hearing with respect to the Plan is now scheduled for hearing on December 15, 2021 [Bankruptcy Docket No. 54]. Notable is that the Debtor has met all milestones set by the Bankruptcy Court, has proceeded in good faith towards implementing its

-7-

#12674622.1

business plan and is proceeding towards confirmation of the Plan as filed with the Bankruptcy Court.

**E.   Commencement of the Chapter 11 Case and Violation of the Automatic Stay**

As noted in the Moving Papers, the Debtor is a defendant in litigation currently pending in Missouri. Elliott Kattan and Mitch Kattan have each been joined in that action. Specifically, prior to the Petition Date, in February 2019, Movants filed a pre-emptive lawsuit against the Debtor and others in the Missouri Court Action, alleging various claims including breach of contract, breach of the covenant of good faith and fair dealing, inducement/misrepresentation and tortious interference involving the purchase and sale of a business.

On June 16, 2021, counsel for Movants were notified of the filing of the Chapter 11 case and that, under 11 U.S.C. § 362(a), creditors may not take any action against the Debtor or the Debtor's property to collect any debt; enforce any lien on the Debtor's real or personal property; repossess any property in Debtor's possession; discontinue any service or benefit currently being provided to the Debtor; and that violation of these prohibitions may be considered contempt of Court.

On June 17, 2021, a Suggestion of Bankruptcy was filed on the docket in the Missouri Court Action by counsel for Defendants. Also on June 17, 2021, post-petition, an Order imposing sanctions

-8-

against the Debtor and the Kattans was entered in the Missouri Court Action. On June 18, 2021, post-petition, counsel for Movants again filed a Motion for Attorneys' Fees in the Missouri Court Action against the Debtor and the Kattans.

Movants were scheduled and listed in Schedule E/F of the Debtor's Chapter 11 petition as "disputed" unsecured creditors without security or priority. Despite knowledge of the within bankruptcy filing for the Debtor, on June 18, 2021, post-petition, Movants continued to file pleadings in the Missouri Court Action seeking relief against the Debtor including, but not limited to, contempt of court, damages, attorneys' fees and costs. Such contemptuous conduct cannot be swept under the rug and dispensed with by Movants.

## F.    Continuation of the Automatic Stay

Given the facts and history of these proceedings and the Debtor's full compliance with the Chapter 11 process, granting the Motion by conditioning and/or lifting the Automatic Stay to permit the Missouri Court Action to proceed, would not be in the best interest of any creditors given the substantial progress made towards reorganization, the Plan treatment as outlined in the Bankruptcy Court filings, and the resolution of the Adversary Proceeding, when all parties are present and have submitted to jurisdiction of the Bankruptcy Court.

#12674622.1

In addition, the Bankruptcy Court should also been mindful that all parties are before this Court and are represented by counsel. Neither the Debtor, Elliott Kattan nor Mourad Kattan are represented by counsel in the Missouri Court Action since the District Court previously granted a Motion to Withdraw as Counsel; accordingly, that matter is certainly not trial ready; and prosecution of the Missouri Court Action would be wholly inconsistent with the purposes and policies behind the Small Business Chapter 11, Subchapter V legislation and these proceedings pending before the Bankruptcy Court.

**LEGAL ARGUMENT**

**POINT I**

**THE BANKRUPTCY COURT SHOULD DENY RELIEF FROM THE AUTOMATIC STAY**

Section 362(d) of the Bankruptcy Code governs relief from the provisions of the Automatic Stay.  Upon the request of  a party in interest and "after notice and a hearing, the court shall grant relief from the [automatic] stay . . . such as terminating, annulling, modifying, or conditioning such stay (1) for cause, . . . ." 11 U.S.C. § 362(d)(1).  "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997).

"The term cause is viewed by many courts as a broad and

flexible concept." Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC), 304 B.R. 111, 130 (Bankr. D.N.J. 2003) (internal quotation marks omitted); accord In re Score Bd., Inc., 238 B.R. 585, 593 (D.N.J. 1999). Broad discretion is vested in the Bankruptcy Court to determine whether there is cause to lift the automatic stay. Id. at 130; In re Rosen, 208 B.R. 345, 356 (D.N.J. 1997).

In deciding whether to grant stay relief to permit a party in interest to continue prosecuting a matter in another forum, courts often rely upon one or more of the following twelve (12) factors:

> 1)   whether relief would result in a partial or complete resolution of the issues;
> 2)   lack of any connection with or interference with the bankruptcy case;
> 3)   whether the other proceeding involves the debtors as a fiduciary;
> 4)   whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> 5)   whether the debtors' insurer has assumed full responsibility for defending it;
> 6)   whether the action primarily involves third parties;
> 7)   whether litigation in another forum would prejudice the interests of other creditors;
> 8)   whether the judgment claim arising from the other action is subject to equitable subordination;
> 9)   whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtors;
> 10)  the interests of judicial economy and the expeditious and economical resolution of litigation;
> 11)  whether the parties are ready for trial in the other proceeding; and
> 12)  impact of the stay on the parties and the balance of the harms.

#12674622.1

_Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc._, 304
B.R. at 130; See also, _In re Todd Shipyards Corp._, 92 B.R. 600
(Bankr. D.N.J. 1988) (observing that to determine if "there is
sufficient cause present to lift the stay, the Court must conduct
a balancing test whereby the interests of the estate are weighed
against the hardships that will be incurred by the movants.");
_Weiss v. United States_, Civil Action No.: 00-1672, 2000 U.S. Dist.
LEXIS 10663, at *4 (E.D. Pa. Jul. 31, 2000) (stating "[c]ause is
broadly construed; specific considerations may include: 1) the
balance of harm to parties if the stay is denied; and 2) the best
interest of efficient administration."). "All twelve factors are
not necessarily present in a particular case, and a court need not
rely on any plurality of factors in deciding whether to lift the
automatic stay." _Maintainco, Inc. v. Mitsubishi Caterpillar
Forklift Am., Inc._, 304 B.R. at 130.

Here, "cause" does not exist to grant relief from the
Automatic Stay to allow the Missouri Court Action to proceed. As
noted from the record, this Chapter 11 was commenced on June 16,
2021 and the Chapter 11 bankruptcy proceeding is on a path towards
confirmation. The Motion seeks relief from the Automatic Stay to
permit Movants to continue prosecution of the Missouri Court Action
and all causes of action that Movants have plead in this Bankruptcy
Court.

#12674622.1

First, the Missouri Court Action will not result in a complete resolution of the issues before this Bankruptcy Court. The Debtor has filed claims sounding in violations of the Automatic Stay and Equitable Subordination. In addition, the proposed Amended Complaint seeks additional claims and causes of action including those found under the UFTA, Section 548 of the Bankruptcy Code and for foreclosure of the Debtor's security interest. If the litigation is shifted to the Missouri District Court, those claims would undoubtedly be lost.

Second, granting relief from the Automatic Stay will scuttle the Debtor's pending New Jersey Chapter 11 bankruptcy case which is nearing confirmation on December 15, 2021, to which Movants have consented, and where unsecured creditors may very well approve the Plan. The Plan, as filed, provides that the Debtor's claims against Movants will be resolved through the Adversary Proceeding. Certainly, given the motivation of counsel, the Adversary Proceeding could be streamlined based upon stipulation, proffers of deposition testimony and the exchange of documents.

Third, the Missouri Court Action does not involve the Debtor as a fiduciary. No claims for trust funds or any fiduciary relationship exist nor have they been plead.

Fourth and with the utmost respect, the Missouri District Court has no intimate knowledge of claims plead over and above this Bankruptcy Court in New Jersey and the claims, asserted in

-13-

District Court Action are "garden variety" contract and alleged inducement claims that are within the wheelhouse of this Bankruptcy Court. Furthermore, the Missouri Court has no special expertise in adjudicating bankruptcy causes of action that are now before this Bankruptcy Court.

Fifth, the Debtor has no insurance covering any of the claims plead in the Missouri Court Action, will have to engage Special Counsel, engage a trial expert and will have to assume full responsibility for defending the lawsuit as the primary contract party under the Asset Purchase Agreement.

Sixth, the Missouri Court Action is primarily a dispute between the Debtor and the Movants, who were the only corporate parties to the Asset Purchase Agreement attached as Exhibit A to the Bauchner Declaration. See Declaration of Joshua Bauchner dated October 1, 2021, Exhibit A. The Debtor joined the Movants principals in the proposed Amended Complaint, Michele and Ana Pieropan, based upon fraud claims, including their scheme to perpetrate a fraudulent conveyance under the UFTA and Section 548 of the Bankruptcy Code by transferring intellectual property and other assets to La Ferramenta, LLC and others in an effort to shield those assets from claims or, ostensibly, to put them out of reach of creditors and for fraudulent inducement under the APA.

Seventh, it goes without saying that the litigation in the Missouri Court Action will only advance one interest -- the

-14-

interests of the Movants -- and would prejudice the rights of other creditors who would be disenfranchised and not be able to participate in the Plan and any bankruptcy recovery pending in the Adversary Proceeding. As noted supra, any recovery under the $4 Million Promissory Note and the Adversary Proceeding generally inures to the benefit of creditors and will be used to fund the Plan along with the proceeds from operations.

Eighth, the Movants' claim is subject to Equitable Subordination and for violation of the Automatic Stay, claims that will evaporate should the Automatic Stay be vacated and the matter be sent back to the Missouri Court.

Ninth, the Movants success in the Missouri Court Action would invariably destroy or neutralize Debtor's claims and causes of action and would result in dismissal of the claims plead for violation of the Automatic Stay, Equitable Subordination, the UFTA and Section 548, since they are a creature of and a substantive right found only in a bankruptcy proceeding and were not plead or asserted in the Missouri Court Action.

Tenth, the interests of judicial economy and the expeditious and economical resolution of litigation will occur should the Bankruptcy Court allow the bankruptcy to proceed unimpeded, and to streamline these proceedings. In that regard, Movants have not objected to either the Proposed Pre-trial Order or Mediation Order in the Adversary Proceeding which appoints the Hon. Donald

-15-

Steckroth (ret.) as the mediator in the Adversary Proceeding and sets forth a schedule and protocol for resolution of the Adversary Proceeding. In addition, all parties are present before the Bankruptcy Court and are represented by able counsel. Respectfully, a review of the Missouri Court docket does not reveal that any substantive event occurred other than discovery motions, enforcement hearings and related discovery-type activities, an application for a temporary restraining order in '2019' and motions to dismiss the complaint. No evidentiary hearings were conducted; no motions *in limine* were held; and no summary judgment motions were argued or decided.

Eleven, the Missouri Court Action is not ready to proceed given the procedural posture and the entry of the Order Staying Case entered by the Missouri District Court on October 15, 2021. The Debtor and the Kattans are unrepresented by counsel whereas here, the parties have engaged capable counsel who can simplify these proceedings following confirmation. Furthermore, the Missouri District Court entered an Order Staying Case on October 15, 2021 staying any pre-trial hearing date and proposed trial date in the District Court Action pending the full outcome of the Debtor's bankruptcy proceeding. See, Kattan Certification, Exhibit "A".

Twelve, continuation of the Automatic Stay will have a negligible impact on the Movants since they have consented to these

-16-

bankruptcy proceedings; filed their Proof of Claim in these proceedings; and appeared through counsel at hearings in these proceedings. On the other hand and in balancing of the harms, a restart of the Missouri Court Action will result in the interference of the Debtor's Bankruptcy Case, diminishment of estate assets by having the Debtor retain Special Counsel, and will have a deleterious effect upon creditor recoveries by losing or diluting bankruptcy claims and property of the estate. Moreover, relief from the Automatic Stay is inappropriate since it will not result in a complete resolution of the claims between the parties.

In balancing the equities, the scales tip decidedly in favor of the Debtor since this Bankruptcy Court with the assistance of the mediator can likely resolve these issues in a prompt and business-like fashion, something that it does routinely in other business disputes pending before the Bankruptcy Court.

## POINT II

### THE BANKRUPTCY COURT SHOULD DENY RELIEF FROM THE AUTOMATIC STAY AS THE CLAIMS AT ISSUE INVOLVE CORE PROCEEDINGS UNDER 28 U.S.C. § 157(b)(2)

28 U.S.C. § 1334 provides that the Bankruptcy Court has jurisdiction over all proceedings arising under the Bankruptcy Code or arising in or relating to a bankruptcy case; nevertheless, under 28 U.S.C. § 157(a), the Court automatically refers all proceedings arising under the Bankruptcy Code or arising in or relating to a bankruptcy case to the Bankruptcy Court.

-17-

Under 28 U.S.C. § 157(b)(2), the Bankruptcy Court may enter final judgments in matters only within the Bankruptcy Court's core jurisdiction.  "Section 157 classifies matters as either 'core proceedings,' which the Bankruptcy Court may 'hear and determine' and on which the court 'may enter appropriate orders and judgments,' § 157(b)(1), or 'non-core proceedings,' which the Bankruptcy Court may hear, but for which the Bankruptcy Court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review, § 157(c)(1)."  In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993).

Core proceedings within the sole purview of the Bankruptcy Court include, "(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; … (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; … (L) confirmations of plans; ... and (O) other proceedings affecting the liquidation of the assets

-18-

of the estate or the adjustment of the debtor-creditor or the equity security holder relationship …" See, 28 U.S.C. § 157(b)(2). A proceeding is "core" "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." In re Marcus Hook Development Park, Inc., 943 F.2d 261, 267 (3d Cir. 1991).

A proceeding is related to a bankruptcy case when the outcome of the proceeding could conceivably have an effect on the estate the Bankruptcy Court is administering. See, e.g., In re Nickels Midway Pier, L.L.C., 2010 WL 415328, at *4 (D.N.J 2010).

Here, the filed Chapter 11 Plan and the filed Adversary Proceeding, as it stands today, set forth claims and causes of action against the Movants for Violation of the Automatic Stay and for Equitable Subordination of Claims, clearly core proceedings. In addition, the proposed Amended Complaint includes additional claims that are certainly with the range of core-type claims. Accordingly, the Debtor's claims fall within the ambit of a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (F), (G), (H), (L) and (O), the Debtor is entitled to have those claims heard and adjudicated in the pending Adversary Proceeding and relief from the Automatic Stay would be inappropriate given the progress of this Bankruptcy Case.

#12674622.1

## POINT III

### THE BANKRUPTCY COURT SHOULD DENY RELIEF FROM THE AUTOMATIC STAY AS THE MOVANTS HAVE SUBMITTED TO THE JURISDICTION OF THE BANKRUPTCY COURT

A creditor that has filed a Proof of Claim in a bankruptcy case has submitted to the jurisdiction of the Bankruptcy Court for adjudication of such claim. Langenkamp v. Culp, 498 U.S. 42, 44-45, 111 S.Ct. 330, 331-32 (1990). Bankruptcy Courts have universally accepted the concept that the filing of a Proof of Claim constitutes submission to a bankruptcy court's jurisdictional reach regardless of any opt-out provision or reservation of rights. In re China Fishery Group, Ltd., 16-11895 (JLG), 2017 WL 3084397, at *1 (Bankr. S.D.N.Y. 2017). See also, Buena Vista TV v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004) (finding that "[a]s the Supreme Court's decisions ... particularly Langenkamp — make clear, when the Copyright Owners filed proofs of claim in the bankruptcy court, they submitted to the equitable jurisdiction of this Court ....").

Some courts liken the filing of a proof of claim to the filing of a complaint against a debtor. See, e.g., In re Stokes, 320 B.R. 821, 825 (Bankr. D. Md. 2004) (noting that in filing a proof of claim, the IRS submitted to the personal jurisdiction of the District Court since the proof of claim "is analogous to a complaint filed in the District Court."); Cruisephone, Inc. v.

#12674622.1

Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.), 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002) ("[A] proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of clam is like a counterclaim.").

Here, because Movants filed a Proof of Claim, three Notices of Appearance in the Chapter 11 proceedings and, not only answered the Adversary Complaint, but filed affirmative Counterclaims and a Third-Party Complaint, Movants have purposely availed themselves of the jurisdiction of this bankruptcy forum and have submitted their claims to resolution before the Bankruptcy Court which is consistent with Fed R. of Bankr. P. 7004 (f) that provides for personal jurisdiction.

In an analogous situation as presented here, in Younge v. Tribune Company (In re Tribune Media Company), 902 F.3d. 384 (3rd Cir. 2018), the Third Circuit affirmed the decisions of the lower courts and held that the Bankruptcy Court had the authority to disallow an employment claim because the former employee failed to raise such jurisdictional objections in the Bankruptcy Court and therefore, impliedly consented to jurisdiction. In so ruling, the Third Circuit found that the claimant had impliedly consented to the Bankruptcy Court's statutory and constitutional authority to

-21-

hear his claims by failing to raise jurisdictional objections in the Bankruptcy Court. Id. at 396.

The Third Circuit found it irrelevant to decide whether such claims were personal injury tort claims, because claimant had consented to the Bankruptcy Court's statutory authority to hear the claims. Id. at 394. The Third Circuit relied on the US Supreme Court's decision in Stern v. Marshall, 564 U.S. 462, 482 (2011), which explains that a claimant waives an objection under Section 157 when it implicates the jurisdiction of the bankruptcy court, chooses to be a party to that litigation, and thus consents to that bankruptcy court's resolution of its claims. Id.

In Younge, the Third Circuit found that the claimant voluntarily assented to the Bankruptcy Court's authority by filing a Proof of Claim, by filing pleadings in the Bankruptcy Case and by appearing at a hearing before the Bankruptcy Court. The Third Circuit found that the claimant consented to the Bankruptcy Court's jurisdiction and waived any objection because none of his statements or filings included any objection to the Bankruptcy Court's statutory authority to decide claims and claimant impliedly consented to the bankruptcy court's constitutional authority. The Third Circuit found that "no court has stated that a litigant must expressly consent to a Bankruptcy Court's jurisdiction." Id. at 394.

-22-

In so ruling in favor of the Debtor, the Third Circuit cited the Supreme Court's opinion in Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 135 S.Ct. 1932, 1948, n.13 (2015), which held that consent to a court's constitutional authority to adjudicate a dispute requires a party's "knowing and voluntary" consent to the court's jurisdiction, and that consent may be express or implied by "actions rather than words." Id. at 394.

The Third Circuit in Younge, also found that the claimant knowingly and voluntarily consented to the Bankruptcy Court's jurisdiction, and that consent was implied based on numerous filings which failed to raise a question of the Bankruptcy Court's constitutional authority to decide his claims and assent to the Court's entry of judgment in his favor.

The Third Circuit also relied on the Fifth Circuit's reasoning in Matter of Delta Produce, L.P., 845 F.3d 609, 617 (5th Cir. 2016), which held that a party impliedly consents to bankruptcy jurisdiction when he "raises no objection when joining the case." Id. at 395.

As set forth in the record of this proceeding and the Adversary Proceeding, Movants filed a Proof of Claim, filed three Notices of Appearance in the Chapter 11 proceeding, filed pleadings in opposition to Debtor's Application for Preliminary Injunction and appeared at the Bankruptcy Court proceedings on August 17, 2021, a Preliminary Injunction hearing and a Status Conference,

-23-

and not only answered the Adversary Complaint, Movants filed affirmative Counterclaims and a Third-Party Complaint that embraced the Bankruptcy Proceedings and purposely availed themselves of the jurisdiction of this forum to adjudicate and resolve their claims before the Bankruptcy Court.

Given Movants actions and conduct, and the fact that all parties have appeared in this Bankruptcy Proceeding, the forum by which to resolve such claims, granting the Motion and lifting the Automatic Stay, is neither appropriate nor warranted given the unique circumstances of this Bankruptcy Case.

## POINT IV

### WAIVER OF THE FOURTEEN DAY STAY PROVISIONS OF FED. R. BANKR. P. 4001(a)(3) IS NOT WARRANTED

In the event that the Bankruptcy Court grants relief from the Automatic Stay, the Bankruptcy Court has the discretion to balance the equities and deny a waiver of the fourteen (14) day stay provisions contained in Fed. R. Bankr. P. 4001(a)(3). In examining the relative hardships, it is clear that, that the Debtor will be prejudiced by a waiver of the fourteen (14) day stay given that it has no counsel in the State of Missouri who can handle pre-trial proceedings, appear at a court hearing and try a case.

Certainly, waiving the fourteen (14) day stay provisions will cause irreparable harm to the Debtor which undermines a reorganization in process and its scheduled confirmation hearing.

-24-

#12674622.1

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an Order (i) denying relief from the Automatic Stay; (ii) denying a relaxation of the provisions of Fed. R. Bankr. P. 4001(a)(3); and (iii) for such other and further relief as the Bankruptcy Court may deem just and proper under the circumstances.

Respectfully,

**WILENTZ, GOLDMAN & SPITZER, P.A.**
*Attorneys for Dukat, LLC,*
*a debtor and debtor-in-possession*


By: */s/ David H. Stein*
       DAVID H. STEIN

Dated: October 19, 2021

–25–