UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 AND 9
Maggie H. McGee, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Email: maggie.mcgee@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 21-14934 KCF |
| | Chapter 11 |
| Dukat, LLC., | |
| | Honorable Kathryn C. Ferguson |
| Debtor. | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO
THE DEBTOR'S PLAN OF REORGANIZATION**

The United States Trustee ("U.S. Trustee"), by and through counsel, and in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby files this objection ("Objection") to the Small Business debtor's Plan of Reorganization filed in connection with the above referenced case, and respectfully states as follows:

**<u>BACKGROUND</u>**

1. On June 16, 2021, Dukat, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11, subchapter V, of title 11 of the United States Code.  ECF No. 1.  Debtor operated a "drop ship" internet business through multiple websites.  In a drop ship business, an entity purchases items from third parties and ships directly to its customers.  It does not retain inventory.

2. The Petition identifies Elliott Kattan as the Managing Member of the Debtor. ECF No. 1 at 5.

1

3. The Debtor filed Schedules or a Statement of Financial Affairs ("SoFA") on June 16, 2021. ECF No.1.

4. Schedule A/B identifies assets including: 1) a bank account holding $100; 2) ownership of BMK, LLC having an unknown value; 3) an internet domain name, customer lists, and software operating system, all with unknown values; and 4) a note receivable in the amount of $4 million. ECF No. 1.

5. Schedule D identifies secured claims of $3,023,018, which is held by Elliott Kattan. ECF No. 1. Other creditors are identified on Schedule D but are identified as unknown. Schedule E/F identifies general unsecured debts totaling $2,228,731.16, all listed as contingent, unliquidated and disputed. ECF No. 1.

6. Debtor's SoFA identifies no income in 2021, $269,317 in 2020, and $1,207,462 in 2019. Debtor identified seven lawsuits pending at the time of filing including a lawsuit by a landlord for non-payment of rent. The SoFA identifies Mourant Kattan as holding a 45% interest in the Debtor and Elliot Kattan holding 55%. ECF No. 1.

7. The IDI was conducted on July 7, 2021, at which time the Debtor's representatives stated that the Debtor was not operating and had not operated in 2021. They indicated that it was their intention to "recapitalize" the Debtor, reopen the business, and pay creditors through a plan.

8. The Debtor filed a Small Business Debtor's Plan of Reorganization on September 16, 2021 (the "Plan"). ECF No. 46.

9. The Plan indicates that the Debtor will have on hand sufficient funds to pay the Debtor's administrative claims on the effective date. ECF No. 46 at 14 at §3.1. In support of this provision of the Plan, the Debtor refers to Exhibit B-Financial Projections and Exhibit C-Plan

Support Agreement. Debtor's Financial Projections show negative income through March 2022 and the Plan Support Agreement states that the Members "shall use commercially reasonable efforts to: (a) assume and agree to pay [Debtor's administrative expenses]." Nothing in the Plan evidences the Members' ability to pay the claims on the effective date or that the claimants have agreed to different treatment.

10. The Plan relies on Debtor's future earnings to fund the plan and recovery of $4 million from litigation with Tarvisium Holdings, LLC. ECF No. 46 at 1 and 16. However, the Debtor is not operating and has no historical base to establish the likelihood of earnings in the future. Furthermore, basis for expecting a likely recovery from the litigation with Tarvisium Holdings is not disclosed.

11. The Plan provides third party releases to each "Exculpated Party," which includes the members of the Debtor, and an injunction relating to the releases. ECF No. 46 at 18 §6.8 and 6.9. The Plan provides a release, which states:

> "In consideration for the entry and delivery of the Plan Support Agreement, Plan funding, the restart of Debtor's business operations and the substantial contributions made to the foregoing, each Exculpated Party and any of their successors or assigns, directly and indirectly, individually and collectively, shall be deemed to be released under the Plan from any and all Claims, Causes of Action (including but not limited to Avoidance Actions), Exculpated Claims, obligations, rights, suits, damages, remedies and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state laws, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or held by any holder of a Claim or Interest or other Entity, based upon or relating to, or in any manner arising from, in whole or in part, the Debtor, any affiliate, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and its Members, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Plan Support Agreement, or related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence relating to the Debtor taking place on or before the Effective Date.

Document      Page 4 of 7

12.     "Exculpated Party" is defined at section 9.28 of the Plan as:

"[t]he Debtor's Members, its officers, directors, managers, members, shareholders, partners, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, and each of their predecessors, successors, and assigns, but only to the extent that such party served in such capacity during the Chapter 11 case."

13.     The Injunction Relating to Exculpation, provides:

The Confirmation Order will contain and act as an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution against the Exculpated Parties, and any other person, whether derivatively or otherwise, of any Claims and Causes of Action Exculpated, released or discharged pursuant to this Plan for Exculpated Claims and Section 6.8 against the Exculpated Parties.

## OBJECTION TO CONFIRMATION

14.     Confirmation of a chapter 11 plan requires that the debtor meet all the requirements of Section 1129(a).  *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).  Even where there are no objections to a plan, a court must find that the debtor fulfilled the requirements of Section 1129(a).  *In re Friese*, 103 B.R. 90, 91 (Bankr. S.D.N.Y. 1989).

### A. Feasibility – 11 U.S.C. § 1129(a)(11)

15.     Under Section 1129(a)(11), a debtor must demonstrate the plan is feasible.  The standard of proof required by a debtor to prove a chapter 11 plan's feasibility is by a preponderance of the evidence.  *See In re Rubicon US REIT, Inc.*, 434 B.R. 168, 174 (Bankr. D. Del. 2010); *In re Trans Max Tech., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006).  The debtor must present evidence to sufficiently demonstrate that a plan has a reasonable chance of succeeding.  *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226.  The debtor has to establish concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under a proposed plan.  *See Trans Max Tech., Inc.*, 349 B.R. at 92.

16. In addition, the Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. *See Greate Bay Hotel & Casino, Inc.,* 251 B.R. at 226.

17. "The purpose of § 1129(a)(11) 'is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor could possibly attain after confirmation.'" *See In re Sound Radio, Inc.*, 103 B.R. 521, 522 (D.N.J. 1989), *aff'd sub nom. Appeal of Robinson*, 908 F.2d 964 (3d Cir. 1990) (citation omitted).

18. The bankruptcy court can consider a wide array of factors in determining a plan's feasibility, including assessment of the debtor's capital structure, the earning power of the business, economic conditions, and the ability of the corporation's management. *Greate Bay Hotel & Casino, Inc.,* 251 B.R. at 226, citing, *In re Landmark at Plaza Park, Ltd.,* 7 B.R. 653, 659 (Bankr.D.N.J.1980). Most importantly, the debtor must provide the bankruptcy court with an estimate of its future earning capacity. *Id.* citing, *In re Phila. & W. Ry. Co.,* 51 F.Supp. 129, 131 (E.D.Pa.1943).

19. In determining whether to confirm reorganization plan, courts consider feasibility in the context of ongoing litigation and will find a plan not feasible if it hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely. *In re WR Grace & Co.*, 729 F.3d 332, 58 Bankr. Ct. Dec. (CRR) 112 (3d Cir. 2013).

20. As Debtor's future earnings are unproven, and there is no historical basis to determine the Debtor's earnings in the future. The projections attached to the Plan are not supported by any evidence and are highly speculative at best. Thus, the Plan fails to satisfy the

feasibility requirement of a chapter 11 plan. Further, Debtor's reliance on proceeds from litigation are equally speculative and fail to meet the feasibility requirement.

### B. Overly Broad Third-Party Releases

21. While the definition of Exculpated Party limits the releases "only to the extent that such party served in such capacity during the Chapter 11 case," the release language itself is very broad and includes language and appears to extend beyond conduct during the chapter 11 case. For instance, the definition of "Cause of Action," in section 9.13 of the plan, which is included in the Release provision, is defined as "all claims, cause of action, third-party claims, counterclaims and cross claims...that may be pending on the Effective date...." At the same time the definition of "Exculpated Claim," defined in section 9.27 of the plan, is limited to a "Cause of Action" "arising during the period commencing on the Petition date through the closing of the Chapter 11 Case." If the intent of the release is to limit the liabilities of the Members only in their capacity during the chapter 11 case, there should be no reason to include all Causes of Action as defined in section 9.13 of the plan. Thus, the release and injunction provisions are overly broad, and the plan should not be confirmed unless and until they are revised to limit the releases to claims arising in connection with the capacity of the members during the chapter 11 case.

### CONCLUSION

For the reasons set forth above, the U.S. Trustee respectfully requests that the Court deny confirmation of the Debtor's plan of reorganization.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGION 3 AND 9

By: /s/ Maggie McGee

                                                              Maggie McGee
                                                              Trial Attorney

Dated: July 13, 2021